The first case on the call of the docket today is agenda number 10, number 127904, People of the State of Illinois v. Antonio D. Kidd, Amy Kemp. You may proceed. Good morning. May it please the Court, my name is Amy Kemp, I work at the Office of the State Appellate Defender, and I represent the appellant Antonio D. Kidd. States' attorneys have extensive and exclusive authority to determine whom to charge with a crime and with what crime to charge them. Because the executive power to prosecute is so formidable, the legislature has provided procedural guardrails on the exercise of that power, the pleading requirements of Section 111.3 of the Code of Criminal Procedure. The judiciary, in turn, has demanded strict compliance with the pleading requirements of Section 111.3, where a defect in the charging instrument is alleged before trial. The State now asks this Court to dilute the standard of strict compliance by tolerating good enough pleading in the face of a pretrial challenge to the charging instrument, at least in cases where the crimes of conviction make reversal a particularly painful prospect. This Court should refuse to do so, for it is the State that got us here. Early and often, Mr. Kidd gave the State pretrial notice that the indictment was not in strict compliance with Section 111.3a, yet the State failed to acknowledge and address the indictment's defect. Under this Court's precedence, reversal must be the unflinching consequence of that failure. The pleading requirements of Section 111.3 are both specific and clear. To charge a person with a criminal offense, the State must use a written charging instrument that alleges the person's commission of the offense by setting forth the nature and elements of the offense charged. The charging instrument fails to allege every element of the offense charged, where it meaningfully departs from the language of the statute defining the offense. So what defect exists in this indictment? The mental state element is missing. The legislature has required the specific intent of for the purpose of sexual gratification or arousal of the victim or the accused, and the State omitted that mental state element, replacing it with the bare adjective sexual. So when we compare the statute to the indictment, we would see that this language is omitted, and therefore the indictment is defective. Yes, Your Honor. Under Quadrato, you would compare the statutory language, that language that was chosen by the legislature, with the language in the charging instrument and see the meaningful departure, because sexual is not equivalent to for the purpose of sexual gratification or arousal of the victim or the accused. It is not interchangeable in Quadrato's phrasing. Would you agree that the charging document does set forth the nature of the offense, but you're arguing that it doesn't set forth the elements? That's correct, that it's missing that mental state element. Counsel, here we know that the trial court did instruct the jury properly. Is that correct? That is correct. Dengvold indicates that jury instructions are irrelevant to the question of strict compliance with Section 111.3. Strict compliance is judged merely by comparison of the statute with the charging instrument without regard to the jury instructions, to the evidence at trial. We see that in Quadrato. To the discovery, we see that in Espinoza. It's just the charging instrument and the statute that are to be compared here. And that's because this was raised at the trial court level? Correct, multiple times. Mr. Kidd first challenged the charging instrument about 10 months, more than 10 months before trial, during a period of self-representation. He, again, challenged the charging instrument exactly nine months before trial, again, during that period of self-representation. This is a man with an eighth-grade education, and yet he recognized the defect. He did his best to articulate it. And two trial court judges rejected the challenges. And most importantly, the State's attorney persistently defended the charging instrument as being exactly what the statute required. She repeatedly refused to amend the charging instrument until the morning of trial, when she finally seemed to recognize the problem and seek to amend the indictment. And she was not permitted to do so. The trial court also denied the defendant's cross-motion to dismiss the indictment. And so here we are. What about the fact that now the State is saying, well, this was charged in the alternative, you know, the penetration offense? Was it sufficient to allege that? No, Your Honor, for several reasons. That argument is certainly forfeited by reference to the State's attorney's representations before the trial court. She said, quote, we have appropriately charged Mr. Kidd with sexual contact. And then again, here, he's been charged with sexual contact. She explicitly disclaimed any intention to charge with sexual penetration. And we know that that is the case based on the course of the trial, the jury instructions. This jury didn't receive instruction on sexual penetration, did not find sexual penetration. And so to allow the State to change its theory of the case on appeal would be most unfair. I think there is an analogy to be made here to Crespo, where this Court said, yes, the State could have apportioned the stab wounds in the charging instrument and in the way it presented the case at trial, but it did not. And so this Court refused to allow the State to do that for the first time on appeal. Here, this Court would have to say, regardless of the State's attorney's stated intention to pursue predatory criminal sexual assault by an act of contact, and the entire course of the trial, the jury instructions and the jury's findings, that, well, he was actually sufficiently charged with sexual penetration as well or instead. And that is not a course that this Court should take. The judicial demand for strict compliance with Section 111.3's pleading requirements is rational and right. It discourages prosecutorial sloppiness and gamesmanship, just as it discourages trial court tolerance of the same, guarding the integrity of the criminal justice system and the appearance of propriety that is as vital to the operation of that system as is actual propriety. It also encourages defendants to speak up before trial about charging instrument defects. If it were not for the split standard, a defendant would have less than no reason to challenge a defect in the charging instrument before trial. Most any pretrial challenge to the charging instrument, insofar as it demonstrates the defendant's awareness of the defect therein, tends to show a lack of prejudice to the defense. The defendant, then, would be better off staying silent about the defect, perhaps even pursuing a defense strategy that is arguably impacted by the defect, if he must prove prejudice on appeal, regardless of the timing of his charging instrument challenge. This case must be viewed against that backdrop. The appellate court affirmed, on the basis that sexual contact is, in effect, contact for the purpose of sexual gratification or arousal of the victim or the accused. But the word sexual has meanings that are both far broader and far narrower than the gratification or arousal meaning assigned to it by the appellate court, such as relating to or affecting the genitals or reproductive system. As this court noted in Terrell, sexual intrusions may be, but are not always, aimed at achieving sexual gratification or arousal. Even the dictionary definition of sexual, to which the appellate court pointed here, that is, relating to the instincts, physiological processes, and activities connected with, excuse me, with physical attraction or intimate physical contact between individuals, is not at all equivalent to the statutory phrase chosen by the legislature for the purpose of sexual gratification or arousal of the victim or the accused. Counsel, I'm sorry, let me go back a little bit. What is the impact of the trial court's denial of the motion to amend by the state during trial? I mean, they did try to fix it. There is no impact, because the question is whether strict compliance was present. And so the State's zero-hour attempt to remedy the defect, insofar as that attempt was not permitted by the trial court, didn't fix the defect. And so we're still left with an unamended indictment that had defects. It's not in strict compliance with Section 111.3. And that's the inquiry on appeal. It's a pretty simple question, really, before this court, which is whether this indictment on its face includes the element for the purpose of sexual gratification or arousal of the victim or the accused. Counsel, may I ask another question? I mean, obviously your argument is this indictment doesn't track exactly the language of the statute, but instead uses this other term, sexual contact. It doesn't have all of the language of the statute. But doesn't the statute later on in the criminal code define sexual contact as any knowing, touching, or fondling by the victim or the accused, either directly or through clothing, of the sex organs, et cetera, of the victim, under a certain age, for the purpose of sexual gratification or arousal of the victim or accused? The statute itself defines this term, sexual conduct, as including a touching that is for the purposes of sexual gratification. So why is the indictment infirm if it's using a term that is defined within the statute that in fact tracks the language of the indictment? Your Honor, the indictment uses a phrase that is not defined in statute. Sexual conduct is distinct from sexual contact. Sexual conduct is defined by statute, but sexual conduct is not sufficient to commit the crime of predatory criminal sexual assault of a child. I'm sorry. I think I missed something. So the statute does define sexual conduct? Correct. And that includes gratification, correct? Sexual conduct is defined to include that same phrase for the purpose of sexual gratification or arousal of the victim or the accused. The indictment does not use the phrase sexual conduct. It uses the phrase sexual contact, which is not defined in statute. Even sexual conduct, and the State does make an argument from the sexual conduct definition, essentially trying to argue that an act of contact between a sex organ and any part of the body of the other is a kind of sexual conduct. It would fit within that definition. It's a more specific kind of sexual conduct. So the State's argument is that somehow that scoops in the statutory definition of sexual conduct. But even the fact that sexual conduct is defined to include for the purpose of sexual gratification or arousal of the victim or the accused defeats this notion that sexual as an adjective itself imports for the purpose of sexual gratification or arousal of the victim or the accused. If sexual always meant that, that gratification or arousal, if sexual as a term always meant that, there would be no reason to include that clause in the statutory definition of sexual conduct. But I do want to be clear here that the legislature could have provided a statutory definition of sexual contact if it wanted to use that phrase. So it could have, instead of saying an act of sexual contact, however slight, between the sex organ or anus of the one and any body part of the other, it could have said simply an act of sexual contact or an act of sexual penetration and then provided a statutory definition for sexual contact. But it didn't do that. And the phrase sexual contact doesn't appear anywhere in the statute or in any of the to this statute. So it's a phrase that the State's attorney herself made up. The legislature did not use that phrase. It instead chose to say an act of contact and then provide the specific intent for the purpose of sexual gratification or arousal of the victim or the accused within the predatory criminal sexual assault statute. Does the legislative history help us at all in this case, aid us? I think that it's worth looking at, and that's why I did include it in the opening brief. It tells us that the legislature did consider expanding the definition of sexual penetration more broadly to include these types of contacts between sex organ or anus and any body part of the other. Decided not to do that. It's not really clear why. But instead decided to more narrowly amend only the predatory criminal sexual assault of a child statute to provide that either an act of sexual penetration or an act of contact between the sex organ or anus of the one and any body part of the other could suffice for the act element of predatory criminal sexual assault. And then I believe about a month later the legislature realized that they had omitted any mental state element and acted again to remedy that omission by adding for the purpose of sexual gratification or arousal of the victim or the accused where an act of contact as opposed to an act of sexual penetration is alleged. So I think at least at the least it shows this Court that the legislature thought about this, determined that the appropriate mental state element for this offense is for the purpose of sexual gratification or arousal of the victim or the accused, attached some importance to that phrase or else it wouldn't have been inserted in the statute. And by doing that, no more really should be required to flag for the state's attorney what needs to be alleged in terms of elements of this offense. It's really pretty remarkable error here, especially given the number of times it could have been corrected and wasn't. The mental state is meant to guard against accidental or charging someone with accidental or inadvertent contact, correct? We do see from the legislative history that that was the motivation in adding the mental state element, yes. So when you add the word sexual to the contact, doesn't that guard against that? No, Your Honor, because that's looking more that sort of inquiry would certainly be relevant if Mr. Kidd had not made a pretrial challenge to the indictment, because what would be important is whether he had notice to prepare his defense and was guarding or was guarded against double jeopardy on that offense. But because he made the pretrial challenge, it really doesn't matter what he knew or didn't know about what the state was trying to charge or what it really meant. What matters is what the indictment says on its face. But here the indictment talks about conduct, but it also includes the acts themselves that he's charged with, correct? Correct, as the nature of the offense. So when you have the combination of those two things, doesn't that satisfy the requirement of pointing out the sexual gratification that's part of the charge here? No, Your Honor, because, again, that would be the appropriate inquiry on a challenge that happened at some time other than before trial, because we'd be looking at what did the defendant know, how could he prepare, how was he guarded against double jeopardy. But because sexual does not necessarily impute the purpose of sexual gratification or arousal of the victim or the accused, there's no equivalence here. It's not interchangeable, as Quadrato would say. I think, again, under Terrell, this Court noted that not all sexual intrusions are motivated by sexual desire or by the aim at sexual gratification or arousal. And so even though the nature of the offense here would have qualified under the statutory definition of sexual penetration as an act of sexual penetration, that doesn't necessarily scoop in for the purpose of sexual gratification, arousal of the victim or the accused. It arguably would bring in a general intent, a general knowledge requirement. But for the purpose of this is a specific intent requirement that the legislature imposed here. Thank you. Mr. Malamuth. Good morning, Your Honors, and may it please the Court. I am Assistant Attorney General Eldot Malamuth on behalf of the people. This Court should affirm the judgment of the appellate court because the oath counts of indictment set forth that defendant had committed the crime here in two ways, by alleging that defendant committed an act of sexual contact with TF and that defendant placed his penis in contact with the mouth of TF. Both counts set forth the elements of the crime because they allege that the defendant committed an act of sexual penetration and that defendant committed an act of sexual contact for the purpose of his gratification or arousal. Now, one thing we need to be clear on. I'm disputing that the State unequivocally, at least up until the trial, said they were not pursuing this, or even at the trial, pursuing this as a penetration case. Well, one thing we should be clear on, Your Honor, is that there was no, contrary to counsel's statement, there was no specific disclaimer of an act of sexual penetration. What there was was an argument that the indictment satisfied the requirement of an act of contact for the purpose of sexual gratification or arousal. So the argument that the defendant made was that the indictment did not set forth the elements of the crime. And what the people argued was that it did set forth the elements of the crime, and, of course, the people still argue that. So the people didn't say they were not pursuing penetration? Well, the people argued that they were pursuing, that the indictment was satisfactory because it satisfied the argument, an act of sexual gratification or arousal. There was no specific waiver of sexual penetration. And with respect to the penetration, there is no requirement that you demonstrate that it was for sexual arousal, correct? That's exactly right, Your Honor. And was the jury instructed with respect to penetration? No, Your Honor. The jury wasn't instructed on that. Why is that? Well, the theory that the State had pursued at that point was that it satisfied the act of sexual gratification, that there was an act of contact that was for the purpose of sexual gratification or arousal. But defendant isn't arguing some kind of variance claim here. Defendant's not arguing that there was he proceeded under this theory, that there was some sort of penetration theory and there's some sort of variance and that therefore this matters. The only argument before the Court is whether the indictment, whether the counts one and two of the indictment, set forth the elements of the crime. But on appeal, you're arguing that in the alternative, it also satisfied the penetration. That's exactly right. And one important thing to note, Your Honor, is that this argument was raised in the appellate court as well. So in the appellate court, the people also argued that the indictment set forth the acts via sexual penetration. And there was no argument of forfeiture raised there in the briefs. And so you know, it's not really an issue of forfeiture or waiver. It's an issue of estoppment. You know, you estopped from arguing something totally different on appeal than you argued below. And it's a tactical decision below. Because if the State were to prove that there was some touching, but maybe not exactly on the mouth, the cheek, the chin, whatever, then the State would still have a sexual penetration charge under the content. Correct? Well, that might be right, Your Honor. That is right. That you have a tactical advantage at trial where you would not have to prove that the touching was exactly on the mouth. Well, no, Your Honor. In fact, that the act here, there's a tactical disadvantage in the way that the jury was instructed. Because the only evidence was that the testimony was entirely that the defendant contacted the victim on the mouth. There was no argument otherwise. And so the theory that was pursued, the way the jury was instructed, in fact favored it required the jury to make a finding that it was actually not required to find. That there was this mental state of sexual gratification or arousal. In fact, one important thing to look at here is returning to where we ended the last where defense counsel ended the argument was the facts alleged in the indictment. And that's really the key here. The facts alleged in the indictment were that the an act of sexual contact and that this act was the contact between the defendant's penis and the victim's mouth. Now, defendant concedes that if these facts had been proven, he was guilty of the  And I understand that. But are you not then conflating the nature and the elements? I mean, Whistlead is very succinct. You have nature. You have elements. Counsel basically conceded on my question that this indictment probably satisfies the nature of the charge that you're arguing. The issue is the specific mental state element. You're under a strict compliance, not a substantial compliance theory. Okay. Your Honor, there are a few things to parse out here. First of all, strict compliance does not mean that we throw out every tool we have of interpreting a legal document. It doesn't mean that we don't look at the document as a whole. It doesn't mean that we don't give words that are plain and ordinary meaning. To be sure, the State has to strictly comply with setting forth the elements of the crime. But in doing so, we look at the indictment and we see, giving words that are plain and ordinary meaning, viewing the indictment as a whole, did it set forth the elements? We don't have to show – defendant doesn't have to show prejudice. But that doesn't mean that the specific language of the statute has to be parroted. What matters is whether the nature and elements were set forth. Now, turning towards this distinction between nature and elements, defendant argues that elements are the constituent parts of the crime and that the nature is what defendant terms the specific manner in which the crime was committed. Now, this isn't, again, using – it's not the plain and ordinary meaning of the word. The plain and ordinary meaning of nature is a more general thing, the essence of it, the inherent nature of something. It's not the more specific manner. So it's not using terms in their ordinary meaning. That's not what nature means. In fact, this Court has used nature in different ways. This Court in De Lorenzo specifically stated that nature does not mean the manner in which it was committed, but it just refers to the crime. But regardless, even if it were true, even if it were true that nature required somehow more specific description of the elements and the elements were the constituent parts, what defendant concedes here is that the specifics of the crime were alleged. And this Court has never held – and defendant can point to no case in this jurisdiction, in any jurisdiction, where a court has held that an indictment is insufficient because it is too specific. I mean, of course a statute is going to use broader language. A statute is meant to encompass a whole range of activity that's prescribed. And an indictment is supposed to use more specific language because an indictment is intended to alert the defendant as to the specific crime of which he is alleged to have committed so that he can prepare his defense. Now – Counsel, let me interrupt you. So just in thinking about jury instructions and how the jury was instructed here, so you have your definitional instruction, and then you have the elements. Wouldn't the elements include that the State would have to prove that this was done for the sexual arousal or gratification of the perpetrator or the victim? Wouldn't that be one of the elements in the jury instructions? And I'm sure it probably was here. If the State were pursuing a theory – yes, Your Honor, if I understand your question. If the State were pursuing a theory of an act of contact for the purpose of sexual gratification – Well, that is the theory they pursued, right? Yes, and that was – the jury was so instructed. That's exactly right. So doesn't it boil down to, does an act of sexual contact, does that mean the same thing as for purposes of arousal of the defendant or the victim? Isn't that what this is? It does, Your Honor. Yes, Your Honor. The question is whether – if in the – not for sexual penetration, but for an act of sexual contact for the purpose of sexual gratification arousal. The question is, does – did the indictment, by stating that defendant committed an act of sexual contact in – with TF and that defendant placed his penis in contact with the mouth of TF, did that set forth that the contact was not accidental or intentional, but for the purpose of sexual gratification arousal? Now, defendant has conceded in the briefs and before here today that the legislative history indicates that that was the intent, that the intent was to avoid any kind of criminalization of accidental contact. Now, defendant has also – If we accept your argument, your theory, that changes what this Court has held about the relationship between the indictment and the charges, doesn't it? No, Your Honor. I don't understand, I guess, in any way how it would change it. The – I mean, would it be taking a broader view and accept a broader interpretation of what's said than in the indictment and the charging? No, Your Honor. In the trial, right? I'm sorry. And I apologize if I'm misunderstanding your question. I'm not sure in which way it's the – would the – broader because it didn't include the language of the statute? Is that what Your Honor is asking? In the indictment, yes, in the way that things are phrased. No. This Court has never held that the language of the statute must be in full repeated verbatim. Well, I understand that, but here you're deviating from the norm. Isn't that right? Well, I'm – In this case. I'm not – I'm not sure in what way there's a deviation from the norm, Your Honor. It might be that often statutes, indictments include the language of a statute. And the question – but the question this Court always asks is, was there – was the indictment – was it sufficient enough to set forth the elements of the crime? Now, as Your Honor has already raised, in this case it did. We have the definition of sexual conduct, which is specifically set forth in the statutes. Now, the defendant does not argue that sexual contact is not encompassed by the definition of sexual conduct, and that sexual conduct is defined as a – includes a touching for the purpose of sexual gratification or arousal. So even using the definitions of the statutes, it meets the definition. It would include sexual gratification or arousal. Now, the defendant argues that somehow this defeats – If we had a situation where the State had chosen to use the term sexual conduct, we likely wouldn't be here, right? That's probably – no, Your Honor. I must disagree, because the defendant would still argue, well, sexual conduct is not in the statute for predatory criminal sexual assault statute. And so somehow that – therefore, that – we can't look elsewhere. But sexual conduct does include the definition. It is defined by – for purposes of arousal of the perpetrator or the victim, right? Sexual conduct does. That's right. That's exactly right. And sexual contact is a type of sexual conduct. Defendant concedes this. And where does it say that in the statute? Well, sexual conduct is defined – But where does it say that sexual contact is a form of sexual conduct? Well, it doesn't, but it's – but it defines – it defines acts. It defines sexual conduct. I mean, it defines all the terms that are used. And, again, this comes down to do we give words that are plain and ordinary meaning? Do we look at other actual statutory definitions? Do we – you know, this Court uses the term sexual contact all the time in its opinions. Do we give words that are plain and ordinary meaning? Do we – when we look at the indictment and the indictment sets forth the facts of defendant contacting T.F.'s mouth with his penis and we say that's sexual contact, do we give that a plain and ordinary meaning, which is that it was for the purpose of his sexual gratification or arousal? Now, defendant argues that – Is it reasonable to assert, as opposing counsel did, that a person could engage in that type of conduct with someone and not do it for the purpose of sexual arousal of the person who's doing it or the victim? Well, this Court has said that these acts are inherently sexual, repeatedly, in Colton, in Kennebrew. I mean, over and over again, this Court has said that these acts are inherently sexual. And that is why, actually, the sexual penetration doesn't require this – a showing of sexual gratification or arousal. But regardless, the point here is that the indictment alleged that there was this contact, defendant committed contact by placing his penis in T.F.'s mouth and that this was sexual contact. And so the question is, giving these – these plain and ordinary meaning, did it communicate that it was for arousal? Now, defendant argues that sexual can sometimes mean just having to do with sex organs or genitals. But in this case, we just know, giving, again, things that are ordinary meaning, that when you accuse someone of sexual contact for placing his penis in a – someone under a 13th's mouth, that that's not what it means. And moreover, it would be redundant because this statement already alleges that the contact involved defendant's sex organ. So then to use sexual to somehow suggest – to spell out that this involved defendant's sex organ was unnecessary, it would render that word redundant and meaningless. And these – the question is, giving these plain and ordinary meaning when the legislature has defined a term. Your Honor, when interpreting legal documents, and this Court has stated in Hall, for instance, that we look towards the whole statute – I mean, the whole indictment. In fact, in Hall, this Court incorporated terms from one count all the way into another count. All we're doing here is we're asking the Court to look at the words in one count. And, yes, we do give words their ordinary meaning. I mean, in fact, sexual can have a different meaning in the statute under defendant's argument. When – and we use every word in an indictment. There's no special requirement. And this – this Court has never held that there's some sort of special requirement to use the exact terminology, the exact verbatim words. I mean, if the – if the indictment had alleged that the – was for the purpose – this contact was for the purpose of defendant's, instead of gratification, satisfaction, what would we say? Well, satisfaction can have different meanings. And so it didn't have – we don't know that it meant – it had to say gratification. We've never had this requirement. This Court has never stated that that's a requirement. Looking at the – just using basic tools, this isn't asking the Court to invent a new good enough way of interpreting indictments. It's simply asking the Court to look at the indictment as it does any legal document when it's looking for whether the – it's set forth the elements of the crime. Here, the elements were set forth, the facts were set forth with – with quite a degree of specificity. And in doing so, it satisfied the requirement that it set forth the elements both as to sexual gratification – an act of contact for the purpose of sexual gratification or arousal – and for an act of sexual penetration. Now, counsel, on that, do you agree that the – actually, the indictment alleged that the defendant placed his penis in contact with the mouth of T.F., not in the mouth of T.F.? That's right, Your Honor. And sexual penetration – I think you were saying in the mouth, but I just wanted to clarify that. Okay. If I misspoke, I apologize. And to be clear, sexual penetration itself is defined as a contact. I see my time is up. So unless there are further questions from the Court, we ask that this Court affirm the judgment of the appellate court. Thank you. Ms. Kamm? I'd like to try to make two quick points before I briefly conclude. First, the State has suggested that there's some ambiguity in how the State's attorney represented the State's charging intentions below. Respectfully, I disagree. Here's the direct quote from the State's attorney. Sex offenses in Illinois either have contact, conduct, or penetration. We have appropriately charged Mr. Kidd with sexual contact, which the statute allows for as predatory criminal sexual assault. I can read the statute to the Court if the Court doesn't have it in front of it, but it specifically says, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of the other. And then there is a clause at the end that says, or an act of sexual penetration. Here, he's been charged with sexual contact. There's no ambiguity here. The State did not pursue a theory of sexual penetration, and that argument should be rejected by this Court. The second point is that sexual doesn't have one meaning. It has many meanings, all of which are plain and ordinary. And Terrell, again, shows us that for something to be sexual, even sexual penetration or other kinds of sexual intrusions does not necessarily mean that it was for the purpose of sexual gratification or arousal of the victim or the accused. From Terrell, at 209, this Court held that there is, that an act of sexual penetration is inherently intentional, as a general matter, intentional or knowing. But the Court went on, this Court will not presume that the legislature intended to limit the definition of sexual penetration only to those acts done for the purpose of sexual gratification or arousal of the accused or the victim. The legislature may have determined that it was not necessary to include the sexual gratification language in the statute, or it may evidence the legislature's intent to punish sexual intrusions, whether motivated by force or by sexual gratification. So this Court recognized that even an act of sexual penetration is not always motivated by the desire for sexual gratification or arousal. It's sometimes motivated by force or perhaps a desire to harass or shame. There could be many different motivations. The legislature, for an act of contact, chose this specific mental state element, and that's what the state needed to allege. It's quite simple, and the state failed to do that. Counsel, with strict compliance, does that mean that you have to parrot the exact language of the statute? I mean, is it possible that the state could have charged this appropriately without using the specific sexual arousal gratification language? I think it's possible. Probably the state ought to just use the statutory language in order to strictly comply with the requirement, but the argument is not that the statutory language has to be parroted. It's that any replacement of statutory language with state attorney language has to be truly interchangeable, quadrato. It has to be essentially equivalent, and we know that sexual is not equivalent to for the purpose of sexual gratification or arousal of the victim or the accused. To affirm the appellate court here would be to destroy the boundary between charging instrument defects raised for the first time on appeal or mid-trial and charging instrument defects raised before trial. At least as far back as the 1970s and as recently as 2018, this court has explicitly endorsed and enforced the boundary and expressed its disapproval of any failure to strictly comply with the pleading requirements of Section 111.3. And even yesterday, in the case of, was it Liebritz, the state's attorney was essentially urging this court to adhere to the split standard, and I do the same here today. As Mr. Kidd's case shows, mere judicial disapproval is not enough. This court must hold the state to the standard of strict compliance and reverse Mr. Kidd's convictions, if there are no further questions. Thank you. Thank you. Case number 127904, People of the State of Illinois v. Antonio Kidd, will be taken under advisement by this court as agenda item number 10. Thank you, Ms. Kent, for your arguments this morning, and Mr. Malamuth as well. Thank you for your arguments.